UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSAN R. LIMOR, TRUSTEE ) | |
| ) | |
| Plaintiff, ) | Case No. 3:04-0855 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| TRAVELERS INSURANCE CO. ) | |
| and THE PHOENIX INSURANCE CO. ) | |
| (One of the Travelers Insurance ) | |
| Companies) (n/k/a St. Paul Travelers ) | |
| Companies Inc.) ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This case comes before the court on a Motion for Summary Judgment filed by the defendant (Docket No. 33), to which the plaintiff has responded (Docket No. 50), and the defendant has replied (Docket No. 71). For the reasons discussed herein, the defendant's motion will be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Susan Limor, is the bankruptcy trustee for creditors of Carmeletha Mason, who was insured by an automobile policy issued by the defendant.[1] Carmeletha Mason was found vicariously liable for the wrongful death of David Anderson in the Eighth Circuit Court for Davidson County, Tennessee. Mr. Anderson's death resulted from a car accident caused by

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's First Amended Complaint (Docket No. 16, attach. 23, First Amend. Compl.), the plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 55), the plaintiff's Response to Defendant's Statement of Facts (Docket No. 57), and the plaintiff's Statement of Additional Material Facts (Docket No. 64).

1

Carmeletha's daughter. Mr. Anderson's family was awarded $895,500 in that action and the judgment eventually forced Carmeletha Mason to file for bankruptcy protection. Ms. Limor has filed this action on behalf of the resulting bankruptcy estate, alleging that the defendants failed to settle the *Anderson v. Mason* action within the policy limits of the automobile insurance policy, in bad faith.[2]

The *Anderson v. Mason* case arose from an accident that occurred on April 8, 1999. On that date, Carmeletha Mason's eighteen-year old daughter, Dwanna Mason, while on an errand to pick up her younger sister at school, drove her mother's car into the back of a van being driven by Mr. Anderson. The collision caused Mr. Anderson's van to roll over several times, crushing Mr. Anderson. It was established at trial that Dwanna Mason was driving the car in excess of a hundred miles per hour when the accident occurred.

After exiting her vehicle, examining the wreck and observing Mr. Anderson's injuries, Dwanna Mason fled on foot. Eventually she caught a ride to her mother's home, where she changed her clothes and removed her wig. She did not call the police. On August 5, 1999, Dwanna Mason pled guilty to vehicular homicide by reckless conduct and was sentenced to prison. On June 11, 1999, Cheryl Anderson, David Anderson's next of kin, filed a wrongful death civil suit against Dwanna Mason and, on February 3, 2000, Ms. Anderson filed a First

---

[2]In numerous filings before this court and the Bankruptcy Court, the parties have disputed who the proper defendants are in this case. From the record, it appears that the proper parties are The Phoenix Insurance Co., and its parent company, Travelers Property Casualty Corp., currently doing business as The Travelers Indemnity Co., which is itself a subsidiary of St. Paul Travelers Corp. (*See* Docket No. 83). However, the defendant has requested a hearing to further explain the relationships between these entities (Docket No. 81), which this court has granted (Docket No. 82) and, accordingly, the court will not further address the issue in this opinion.

2

Amended Complaint, adding Carmeletha Mason as a defendant with vicarious liability for the accident under the "family purpose doctrine."

Carmeletha Mason's automobile liability coverage was limited to $100,000. On June 17, 2000, the defendant insurer sent Carmeletha Mason a letter advising her that it had received the lawsuit and would provide for a defense. The defendant selected Bridgett Wohlpart, Esq., as counsel for the case. Ms. Wohlpart was employed by The Walker Law Office, which is a "captive" law firm. That is, the law firm represents only the defendant's insureds and affiliates. Ms. Wohlpart herself was a salaried employee of the defendant from March 2000 to August 2003. Ms. Wohlpart did not tell Carmeletha Mason about her relationship with the defendant but rather stated that she was Carmeletha Mason's attorney and not the attorney for the defendant.

Whether or not Carmeletha Mason could, in fact, be held vicariously liable under the "family purpose doctrine" depended in part on whether Carmeletha Mason had given general consent for her daughter to use the vehicle. At trial, Carmeletha Mason alleged that her daughter did not have such permission. In support, Carmeletha Mason testified that her daughter did not live with her but instead lived with her grandmother, Mamie Battle, and did not have permission to use the car. However, at trial, it was undisputed that the car was registered in the name of Carmeletha Mason; that Dwanna Mason was at Carmeletha Mason's house on the night before and on the day of the accident; that on the date of the accident, the car was left at Carmeletha Mason's house, along with a separate set of keys; that Dwanna Mason drove the car from her mother's house to pick up her sister from school and take her home; and that Dwanna Mason returned to her mother's house after the accident occurred.

In addition, on July 12, 1999, Mamie Battle informed the defendant that Dwanna Mason

3

was not, in fact, living at Ms. Battle's home but instead was living with her mother at the time of the accident and that, to Mamie Battle's knowledge, Dwanna Mason had driven Carmeletha Mason's car on two or three prior occasions.  Internal memoranda produced by the defendant in this case indicate that it was aware of these and other credibility issues.  Specifically, an internal memorandum dated before the trial commenced indicates that Ms. Wohlpart herself expected to lose at trial but to prevail on appeal (Docket No. 53, Ex. 5)  In addition, Ms. Wohlpart specifically informed the defendant insurer that, if the jury found that Carmeletha Mason could be held liable, the damages would likely exceed the policy limits.  The defendant has admitted that Ms. Wohlpart felt that there was a conflict of interest between Carmeletha Mason and the defendant insurer and that she preferred the interests of the insurer over Carmeletha Mason's interests.

On January 11, 2002, in connection with a hearing on Dwanna Mason's motion for summary judgment, counsel for Ms. Anderson informed Ms. Wohlpart that her client was willing to settle the case for the policy limits in insurance coverage, which amounted to $100,000.  Ms. Wohlpart responded that she would get back in touch with Ms. Reese regarding the offer but never did so.  Ms. Reese alleges that her client gave her the authority to settle the case for $100,000 from that period up to the date of trial.  However, Ms. Wohlpart extended no settlement offers.  Neither did Ms. Wohlpart inform her client that a settlement offer had been extended by opposing counsel.  Ms. Wohlpart testified at her deposition that her decision not to settle the case was informed in part by her knowledge that, even if the jury awarded more than $100,000, the insurance company would only have to tender the policy limits and her belief that

4

Carmeletha Mason would be protected by bankruptcy.[3] Perhaps it was for this reason that, when Carmeletha Mason asked Ms. Wohlpart "what's the worst that could happen," Ms. Wohlpart responded, "this trial is just for the policy limits."

On January 30, 2002, the *Anderson v. Mason* case proceeded to trial and, on January 31, 2002, the jury assessed liability against Carmeletha Mason, finding that she had, in fact, given her daughter consent to use the automobile in question and, therefore, the "family purpose" doctrine applied. The jury awarded Ms. Anderson $895,500 against Carmeletha Mason, which the trial court declined to overturn. Afterwards, on March 5, 2002, Ms. Wohlpart offered to settle the judgment for $100,000. This amount was actually smaller than the insurance company owed at that time because it did not include prejudgment interest. Ms. Wohlpart's offer was denied.

On June 28, 2002, her assets subject to execution to pay the judgment, Carmeletha Mason filed for bankruptcy protection in the United States Bankruptcy Court for the Middle District of Tennessee. On July 29, 2003, the Tennessee Court of Appeals denied Carmeletha Mason's appeal of the trial court's decision and, on January 26, 2004, the Tennessee Supreme Court denied Carmeletha Mason's permission to appeal the appellate court's decision. While the case was pending on appeal, on Ms. Wohlpart's advice, the defendant insurer declined to post a supersedeas bond to protect Carmeletha Mason's assets. In a memorandum to the insurer, Ms. Wohlpart explained why they should not file the bond: in so doing, a plaintiff could argue that the insurer had waived its policy limits.

---

[3]Ms. Wohlpart's representation of the insured in this case raises, in the court's mind, serious ethical questions that may, at some point, be appropriate for consideration by the proper forum.

5

On April 13, 2004, Susan Limor, the bankruptcy trustee, filed this action in the United States Bankruptcy Court for the Middle District of Tennessee, alleging (1) that the defendant had failed to settle the *Anderson v. Mason* case for the policy limits in bad faith, and (2) gross negligence. On December 13, 2004, the plaintiff filed a First Amended Complaint. The case was thereafter removed to this court pursuant to 28 USC § 1334(e), and on June 6, 2006, the defendant moved for summary judgment.

## ANALYSIS

**I.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

6

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II.    Factual Evidence In Support of Bad Faith

Under Tennessee law, an insurance company with exclusive control over the right of settlement of claims who "fails to exercise good faith in considering offers to compromise the claim for an amount within the policy limits" can be held liable for the excess judgment. *Tennessee Farmers Mut. Ins. Co. v. Wood*, 277 F.2d 21, 24 (6th Cir. 1960); *see also Goings v. Aetna Casualty & Surety Co.*, 491 S.W.2d 847, 850-51 (Tenn. Ct. App. 1973). Furthermore, an

7

insurer does not escape liability for bad faith merely by "mak[ing] what it believes to be an honest dollar evaluation of the claim against the insured;" rather, "[i]t is from all relevant circumstances that the issue of good faith is to be determined." *Id*. at 851; *Southern Fire Casualty Co. v. Norris*, 250 S.W.2d 785, 670 (Tenn. Ct. App. 1952) ("[T]he insurer cannot escape liability by considering only what appears to be for its own interest.") More specifically, Tennessee courts have held that "a failure to keep an insured advised is suggestive of indifference to the trust imposed by the policy which, in turn, may raise an inference of bad faith." *Goings*, 491 S.W.2d at 851; *see also Norris*, 250 S.W.2d at 666-667 (holding that the insurer's failure to advise the insured of settlement offers and other developments was evidence indicating bad faith). In addition, "[w]hile an insurance company may, in determining whether to accept or reject an offer of compromise, properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured, and if it fails to do so, it acts in bad faith." *Coppage v. Fireman's Fund Ins. Co.*, 379 F.2d 621, 623 (6th Cir. 1967).

In *Goings*, the plaintiff testified that counsel for the insurer "never told her anything about any offers to settle and that she never knew that the case could have been settled within the policy limits" before and during the trial. *Id*. at 850. In reversing the trial court's dismissal, the court held that "this disputed issue alone . . . as applied to other facts of the case" constituted a material issue of fact that should have been considered by a jury. *Id*. The court further elaborated that, "it is the duty of the insurer in those cases where there is little, if any, doubt about the insured's liability to keep the insured advised of all offers of settlement which could reasonably affect the insured's position." *Id*. at 851.

8

In the instant action, there is at least a genuine issue of material fact[4] as to whether the insurer exercised its duty to keep the insured advised of important developments such as offers of settlement. Other facts, such as Ms. Wohlpart's admission that she preferred the interests of the insurer to Caremeletha Mason, also weigh in favor of bad faith. Ms. Wohlpart's deposition testimony that her decision not to settle the case was informed by the policy limits and her prediction that Carmeletha Mason could avoid payment through bankruptcy weighs against the merits of the defendant's position. The Sixth Circuit, applying Tennessee law, has noted that testimony from an insurance company representative that "he would have been more concerned about a verdict in excess of the policy limits, if [the insured] had been solvent; that he looked upon a poor man differently than upon a rich one," contributed to determining whether the insured was "merely gambling with the insured's rights . . . because the offer of settlement was not sufficiently less than the policy limits." *Tennessee Farmers Mut.*, 277 F.2d at 33. Accordingly, the court cannot grant summary judgment as to this claim. Whether or not the defendant acted in bad faith will be a question for the jury.

### III. Gross Negligence

The plaintiff has asserted a claim for gross negligence, which the defendant alleges must be dismissed because there is no separate cause of action under Tennessee law for negligent—as opposed to fraudulent—failure to settle a claim. *Norris*, 250 S.W.2d at 785. The plaintiff agrees with the defendant's assertion that negligence serves only as a factual predicate for fraudulent failure to settle for an amount within the insured's policy limits and does not constitute its own

---

[4]Indeed, had the plaintiff filed a cross-motion for summary judgment, or did the appellate court look with more favor upon the grant of summary judgment to the non-moving party, the only remaining issue might be, who is the proper defendant in this case.

9

cause of action. Accordingly, the court will grant summary judgment as to the plaintiff's gross negligence claim.

## CONCLUSION

For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted in part and denied in part. The plaintiff's claim for gross negligence will be dismissed. Summary judgment as to the plaintiff's claim for bad faith failure to settle within the policy limits will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge